Our final case for oral argument this morning is United States v. Hill, appeal number 23-1307. Colleen Ramay Good morning, thank you, your honors. May it please the court, my name is Colleen Ramay and I am with the Federal Defender's Office on behalf of Mr. Christopher Hill, the defendant appellant. The right to an impartial jury of one's peers is so foundational to our system of justice that where a reviewing court cannot be assured based on the record that each juror was in fact able to act impartially, the remedy is remand for a new trial without regard to the strength of the evidence against the defendant. In this case, the court should vacate Mr. Hill's conviction and remand for a new trial because the record does not reflect that juror number 55 could act impartially. I want to pause for a second to talk a little bit about the standard of review because the standard of review is indeed abuse of discretion. There is case law that reflects that we give a highly deferential standard of review to decisions about whether or not to strike a juror for cause. However, there is also this idea that we do have to have some review and that where the record does not show an unequivocal firm statement by the juror that she can act impartially, it is insufficient and that will be considered an abuse of discretion. That's precisely what we have here. We look at the record and the colloquy with the juror holistically. If we look closely at what happened in this case, we begin with juror number 55's unequivocal initial statement. The court asks whether her son's involvement in law enforcement would affect her ability to be impartial and she says yes, unequivocally. Asked to explain, she said that it would affect her ability to be impartial because she worries about her son who is a police officer, a sheriff's agent. She worries about her son every night dealing with situations involving drugs and alcohol. This case is about drugs. This case involved a very dangerous, risky stop of a defendant who was carrying drugs. What about her statement at another point that there was nothing about this case being a drug case that would stop her from being impartial? I think, Your Honor, I noticed that she said she could try to keep her bias out of it. She sort of nodded her head. I can look at the transcript again. I don't remember that specific statement that she said that there was nothing about it being a drug case. I know that that was asked of several other jurors. Every time she was asked, aside from the head nod, she said she could, when the court asked, do you think that you can listen to the testimony and the evidence that comes from the witness stand and base a decision solely on what you see in here in the courtroom? She says, I could try. The court asked again if she could set aside her personal beliefs and she nodded her head. I think that's the strongest evidence the government has that she made an unequivocal statement. So why wouldn't that be sufficient? The judge is in there. The judge is assessing the jurors. The judge is in a much better position being in the courtroom watching demeanor to assess things rather than a cold transcript. Why wouldn't that be sufficient? I admit that that's what we have. We have the cold transcript and that's what we have to use for our review. Realistically, the juror number 53 had the same head nod. That's all we have. But juror number 53 had other things as well, other responses that were different. I didn't see a huge difference. In reading the transcript, there was I will try versus I could try, although I think juror 53 said I will try. And juror 55 said she could try in response to one of the questions. There wasn't a lot of daylight there. I believe juror 53 also, one of the differences when asked about whether she could give law enforcement testimony the same way, she said I think so, yes. And doesn't that again just go to this, it's the cold transcript. I can imagine a million different ways for the sentence. I think so, yes. It's how that's delivered and the district judge is there and able to make the determination. That's possible, Your Honor. I mean, I agree with that. I think that all of the case law we have says I think when statements such as I think or, you know, she says I somewhat share the concern that I can't give the defendant a fair shake. Everything she says after the unequivocal yes, I am biased, at least from the transcript, comes off as equivocating. And then we also have just the situation that I think needs to be taken into consideration here. We were down to the last two jurors of the veneer court, the last two potential jurors, and they still needed to fill a seat to have a full jury. And so, you know, I think it's natural to try to want to make this veneer work and not have to recess and call new people in and do all of that. But we were in a situation where we're splitting hairs. In my reading of the transcript, they were functionally the same, the two jurors. And I think that if we're going to have any review, if we're going to, we can't, we weren't there. So I understand that we do want to give the judge the benefit of the doubt in terms of they were there, they saw the demeanors and all of that. But everything that this person said, this juror number 55 said, was she was worried about her sons in situations precisely like the situation that they were dealing with in this case. And, you know, the Ninth Circuit has said in a close case, which I think that hopefully we can all agree that this is at least a close case, that the doubt should be resolved against seating the juror because of how important this right to an impartial jury is. So in this case, I would urge the court to follow suit and to resolve the doubt against seating the juror and remand for a new trial. Unless there are other questions, I'll reserve the remainder of my time. Thank you, Ms. Remy. Thank you. Mr. Sullivan. Thank you, Your Honor. Good morning. I believe it's still morning. Still morning. My name is Brennan Sullivan and I represent the United States. The district court was within its discretion to deny the forecast challenge of juror number 55. So this court should affirm. I'd like to pick up with Judge Kollar's question. You pointed out how at page 98 of the voir dire transcript, juror number 55 says, I think so, yes, when she's asked the crucial question in this case. Can she judge a law enforcement officer testimony the same as any other witness? Specifically, how that's delivered matters. And as this court noted in Granger from 2023, a tone of voice, direct eye contact, or body posture can transform what might be a shaky promise into a real binding commitment. I would also note that for the record at page 98, juror number 55 says yes twice in response to this statement. Likewise, Judge St. Eve, I would also point out that the nodding, I believe it's at page, I want to say it's page 97, would also be sufficient. This juror in this case was asked, again, the same question, whether she can reach a verdict based on the evidence in the law and set aside her personal beliefs and opinions aside. And finally, and we note this at the bullet point list at page 19 of our brief as well, that when the defense counsel questioned juror number 55 and asked specifically how she would judge both, quote, defense-friendly testimony as well as just any other testimony, she stated the correct response, which is that she would have to hear the witness's testimony before concluding whether it's believable, which is what you expect from jurors. Any of the questions that you're identifying go to whether or not she could be, she could impartially evaluate law enforcement testimony. What about her statement that she has trouble with drug cases because of her son's appointment, which I think is a little bit different than not judging law enforcement testimony the same as every other testimony. Well, Your Honor, I think based on the context, I believe that juror 55, 53 from the review of the record was specifically asked, and the context is judging law enforcement officer's testimony. There's a bit of parroting that juror 55 does, and so when she's talking about whether this would specifically affect her or not, I believe that in context it refers to that, whether she can judge a law enforcement officer's testimony the same as a civilian witness testimony. But specifically with the nodding of her head, and the crucial question, at least that this court has always identified with Thompson and most recently Granger, is whether the juror can purge these personal biases and beliefs out of her head and judge the case based on the evidence in the law. Her nodding of her head alone, as Your Honor noted, is a sufficient basis upon which the court could conclude that. The court didn't put anything on the record based on her demeanor, in her body language, I believe the nod of the head. What do we do without that? Well, certainly, Your Honor, the court didn't make that specific finding, but that finding was always baked in, at least in this court's prior decisions. I would note, I believe Allen at page 466 brings up the prospect that a trial judge could consider confidence, a tone of voice, tenor of voice, but that isn't listed anywhere in the fact section of Allen. It was still enough for the court to affirm there, and the government request that the court affirms here for the same basis. If there are no further questions, Your Honor, then the United States would ask that you affirm for the reasons stated in your brief. Thank you, Mr. Sullivan. Ms. Romay? Just to pick up on Allen, where we left off, Allen is just distinguishable. It is. While there was a clear expression of bias, like we had here, in Allen, each time it was tried to confirm, there was a very clear expression, yes, I can set this aside. So in Allen, the juror said that their prior experience would somehow prejudice them against the defendant, asked if she could be open-minded, give the defendant the presumption of innocence. She said yes. It was very clear, very unequivocal. Then asked whether the nature of the charges would make it hard to be fair to both sides. She again said yes, but nevertheless, she did affirm she would give the defendant the benefit of the doubt and reserve judgment until everything was presented. So it was this idea that was very squarely established in the record in Allen that she was acknowledging her bias and was very confidently saying she could set it aside. I just don't think that our record here gives that same level of assurance. We have, you know, to me it seems like when you're here, if someone asks you a question multiple times and you're sitting there and they're the judge and you're trying to give the right answer. And so the number of times that this juror was asked the same question between the initial expression of bias and then the equivocation multiple times. I just don't think one head nod can, you know, when you're nodding along, you're trying to give like the teacher or the judge or whoever the right answer because you want, you know. I just don't think that that can overcome her initial expression of bias and sort of her inability to, there wasn't this same sort of okay, I can separate myself from this. There was concern on that level. So for those reasons, we ask this court to reverse. Thank you. Thank you. Thanks to both counsel. The court will take the case under advisement and that concludes our arguments for today.